NO. 08-3324

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| DR. BERNARND T. LEONELLI, deceased, by his )<br>Personal Representative, SUSAN M. BENTZ, )<br>     )<br>    Plaintiff-Appellant    )<br>     )<br>    v.     )<br>     )<br>THE CITY OF KENDALLVILLE, OFFICER )<br>DOUGLAS M. DAVIS, PATROLMAN MIKE )<br>MCCANN, DETECTIVE LANCE WATERS, )<br>SERGEANT LARRY RICHARDSON, and )<br>PATROLMAN JOHNNY RICHIE )<br>     )<br>    Defendants/Appellees.    ) | Appeal from the United States<br>District Court, Northern District of<br>Indiana, Fort Wayne Division.<br><br><br>Case No. 1:07-cv-121<br><br>Hon. William C. Lee |

_____

# APPELLEES' BRIEF

_____

Linda A. Polley, #10897-02
Andrew S. Williams, #23797-02
HUNT SUEDHOFF KALAMAROS, LLP
803 S. Calhoun Street, 9th Floor
Fort Wayne, IN 46802
Telephone: (260) 423-1311
Attorneys for Defendants/Appellees,
The City of Kendallville, Patrolman Douglas
M. Davis, Patrolman Mike McCann,
Detective Larry Richardson, and Patrolman
Johnny Richie

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.: 08-3324

Short Caption: Bernard T. Leonelli v. City of Kendallville, et al.

(1)     The full name of every party that the attorney represents in the case:

       City of Kendallville, Patrolman Douglas M. Davis, Patrolman Mike McCann, Detective Lance Waters, Sergeant Larry Richardson and Patrolman Johnny Richie

(2)     The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this Court:

       HUNT SUEDHOFF KALAMAROS LLP, 803 S. Calhoun Street, 9th Floor, Fort Wayne, Indiana 46802.

(3)     If the party or amicus is a corporation:

       i)     Identify all its parent corporations, if any; and

               Not applicable.

       ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock:

               Not applicable.

Attorney's Signature: s/Linda A. Polley               Date:  March 2, 2009

Attorney's Signature: s/Andrew S. Williams          Date:  March 2, 2009

| | |
|---|---|
| Attorney's Printed Names: | Linda A. Polley #10897-02 and Andrew S. Williams #23797-02 (counsel of record for appeal) |
| Address: | Hunt Suedhoff Kalamaros, LLP, 803 S. Calhoun Street, 9th Floor, Fort Wayne, Indiana 46802 |
| Phone Number: | (260) 423-1311 |
| Fax Number: | (260) 424-5396 |
| Email Address: | LPolley@HSK-Law.com and AWilliams@HSK-Law.com |

# TABLE OF CONTENTS

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT.........................  ii

TABLE OF CONTENTS......................................................  iii

TABLE OF AUTHORITIES................................................  vi

I.      JURISDICTIONAL STATEMENT .........................................  1

II.     STATEMENT OF THE ISSUE ..............................................  1

III.    STATEMENT OF THE CASE ...............................................  2

IV.     STATEMENT OF MATERIALS FACTS ...............................  2

V.      SUMMARY OF THE ARGUMENT .......................................  5

VI.     ARGUMENT .......................................................................  7

    A.      Standard of Review .......................................................  7

    B.      The District Court applied the correct standard…...........  8

        1.      The District Court did not consider inappropriate
            facts in its probable cause analysis……….….....  9

        2.      The District Court did not consider inappropriate
            facts in its exigent circumstances analysis...........  11

    C.      The District Court correctly determined that Officer
        Davis had probable cause to arrest Dr. Leonelli…………  14

        1.      Officer Davis had probable cause to arrest
            Dr. Leonelli for Resisting Law Enforcement…….  15

        2.      Officer Davis had probable cause to arrest
            Dr. Leonelli for Invasion of Privacy……………..  19

    D.      The District Court correctly concluded that Officer Davis
        is entitled to qualified immunity………….………………  20

1.      Officer Davis did not violate a clearly established
        Constitutional right…………………………....      22

2.      Even if Officer Davis lacked probable cause to
        arrest Dr. Leonelli for Resisting Law Enforcement
        and Invasion of Privacy, it would not have been
        clear to a reasonable officer that Officer Davis
        lacked probable cause under the facts present at
        the time of Dr. Leonelli's arrest…………………      22

E.      The District Court correctly determined that exigent
        circumstance existed which permitted the Kendallville
        Officers to search Dr. Leonelli's residence without a
        warrant……………………………………………...      23

F.      The District Court correctly determined that the scope
        of the search that was performed by four of the
        Kendallville Officers was appropriate……………………      25

G.      The District Court did not err when it concluded that
        the Kendallville Officers are entitled to qualified
        immunity……………………………………………………      26

        1.      The Kendallville Officers did not violate a
                clearly established Constitutional right…………....      27

        2.      Even if Officer Davis, Detective Waters, Officer
                Richardson and Officer Ritchie lacked exigent
                circumstances to search the Granada Residence,
                it would not have been clear to a reasonable officer
                that, under the facts present at the time of the
                search, the search was illegal………………….…..      27

H.      The District Court correctly determined that the
        Kendallville Officers are entitled to immunity under the
        Indiana Tort Claims Act…………………………….…..      28

I.      The District Court correctly determined that Dr. Leonelli
        has no claim for punitive damages……………………….      29

J.      Officer McCann did not engage in any actionable
        conduct……………………………………………..………      29

K.    <u>There have not been any arguments raised by Dr. Leonelli which call into question the District Court's decision to grant summary judgment for the City of Kendallville</u>...... 30

VII.    CONCLUSION ............................................................. 30

.

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page**

*Anderer v. Jones,*
   385 F.3d 1043, 1049 (7th Cir. 2004)…............................................... 9, 14

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 252 (1986)................................................................ 7, 8

*Awe v. Ashcroft,*
   324 F.3d 509, 512-13 (7th Cir. 2003)................................................ 30

*Biddle v. Martin,*
   992 F.2d 673, 677 (7th Cir. 1993).................................................... 19

*Butt v. McEvoy,*
   669 N.E.2d 1015, 1017-18 (Ind. Ct. App. 1996)............................. 28

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 322 (1986)................................................................ 7

*Cleveland-Perdue v. Brutsche,*
   881 F.2d 427, 430 (7th Cir. 1989).................................................... 20

*Donovan v. City of Milwaukee,*
   17 F.3d 944, 952 (7th Cir. 1994)........................................................ 21

*Feliberty v. Kemper Corp.,*
   98 F.3d 274, 276 (7th Cir. 1996)........................................................ 7

*First Nat'l Bank of Cicero v. Lewco,*
   860 F.2d 1407, 1411 (7th Cir. 1988)................................................. 8

*Fitzpatrick v. Catholic Bishop of Chicago,*
   916 F.2d 1254, 1256 (7th Cir. 1990)................................................. 8

*Hammon v. Kunard,*
   148 F.3d 692, 695 (7th Cir. 1998).................................................... 21

*Hernandez v. Sheahan,*
   455 F.3d 772, 775 (7th Cir. 2005).................................................... 14

*Kernats v. O'Sullivan*,
    35 F.3d 1171, 1176-77 (7th Cir. 1994).............................................. 21

*Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 586 (1986)................................................. 8, 13

*Mannoia v. Farrow*,
    476 F.3d 453, 457 (7th Cir. 2007)..................................... 21

*Merrit v. De Los Santos*,
    721 F.2d 598, 601 (7th Cir. 1983)..................................... 29

*Meyer v. Robinson*,
    992 F.2d 734, 738 (7th Cir. 1993)..................................... 20

*Mustafa v. City of Chicago*,
    442 F.3d 544, 547 (7th Cir. 2006)..................................... 14

*Minnesota v. Olson*,
    495 U.S. 91, 100 (1990)…………................................... 18, 23

*Paton v. MFS/Sun Life Fin. Dist., Inc.*,
    480 F.3d 478, 488 (7th Cir. 2007)..................................... 17

*Pearson v. Callahan*,
    129 S.Ct. 808 (2009)…..................................................... 21

*Pourghoraishi v. Flying J, Inc.*,
    449 F.3d 751, 759 (7th Cir. 2006)…................................... 17

*Scott v. United States*,
    436 U.S. 128, 136-37 (1978)…………................................. 14

*Saucier v. Katz*,
    533 U.S. 194, 201-02 and 205 (2001)............................... 20, 21

*Smith v. Wade*,
    461 U.S. 30 (1983)…………………................................... 29

*Tawdul v. State*,
    720 N.E.2d 1211, 1212, 1214 and 1217 (Ind. Ct. App. 1999).......... 15, 16, 22

*Thompson v. Wagner*,
   319 F.3d 931, 934 (7th Cir. 2003)..................................................... 9, 14, 15

*United States v. Arch*,
   7 F.3d 1300, 1304 (7th Cir. 1993)..................................................... 12, 23, 24, 27, 28

*United States v. Jenkins*,
   329 F.3d 579, 581 (7th Cir. 2003)..................................................... 23, 25

*United States v. Lenoir*,
   318 F.3d 725 730 (7th Cir. 2003)..................................................... 23

*United States v. Marshall*,
   157 F.3d 477, 482 (7th Cir. 1998)..................................................... 12, 24

*United States v. Parra*,
   402 F.3d 752 (7th Cir. 2005)..................................................... 9, 14

*United States v. Richardson*,
   203 F.3d 626, 629 (7th Cir. 1999)..................................................... 12, 23, 24, 27, 28

*Wellman v. State*,
   703 N.E.2d 1061, 1062-63 (Ind. Ct. App. 1998)............................... 15, 16, 17, 22

*Wollin v. Gondert*,
   192 F.3d 616, 620-21 (7th Cir. 1999)................................................. 7

## **Statutes**                                                      **Page**

I.C. 34-13-3-3…………………………………………..………… 28

I.C. 35-44-3-3……………………………………………………. 15

I.C. 35-46-1-15.1………………………………….……………… 19

## **Rules**                                                             **Page**

F.R.C.P. 56…………………………………………………….. 7

NO. 08-3324

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| DR. BERNARND T. LEONELLI, deceased, by his )<br>Personal Representative, Susan M. Bentz, )<br>         )<br>    Plaintiff-Appellant    )<br>         )<br>    v.    )<br>         )<br>THE CITY OF KENDALLVILLE, OFFICER )<br>DOUGLAS M. DAVIS, PATROLMAN MIKE )<br>MCCANN, DETECTIVE LANCE WATERS, )<br>SERGEANT LARRY RICHARDSON, and )<br>PATROLMAN JOHNNY RICHIE )<br>         )<br>    Defendants/Appellees.    ) | Appeal from the United States<br>District Court, Northern District of<br>Indiana, Fort Wayne Division.<br><br><br>Case No. 1:07-cv-121<br><br>Hon. William C. Lee |

_____

# APPELLEES' BRIEF
_____

## I.
## JURISDICTIONAL STATEMENT

The Appellant's jurisdictional statement is complete and correct.

## II.
## STATEMENT OF THE ISSUE

Whether the District Court's determination that the Defendants/Appellees are entitled to

summary judgment was proper where the Plaintiff/Appellant failed to raise an issue of material

fact.

1

# III.
# STATEMENT OF THE CASE

## A. Nature of the Case

Bernard Leonelli initiated this action against the City of Kendallville, Officer Douglas M. Davis, Officer Mike McCann, Detective Lance Waters, Sergeant Larry Richardson and Officer Johnny Richie (collectively "Kendallville Officers") alleging that the Kendallville Officers violated his Fourth and Fourteenth Amendment rights. He claimed that Officer Davis and Sergeant McCann falsely arrested and maliciously prosecuted him. Dr. Leonelli also claimed that the Kendallville Officers illegally searched his home.

## B. Course of Proceedings

The Appellant's "Course of Proceedings" section is complete and correct.

## C. Disposition Below

The Appellant's "Disposition Below" section is complete and correct.

# IV.
# STATEMENT OF MATERIAL FACTS

On May 3, 2006, the Kendallville Officers were dispatched to Dr. Leonelli's house on Granada Drive in Kendallville ("Granada Residence"). (Supp. App., pp. 3, 7, 9, 11 and 13). There had been two 911 calls to the Kendallville Police Department, the first by a man identifying himself as "Gordon", reporting a domestic dispute with a fire on the lawn of the Granada Residence. (Supp. App., pp. 72 and 73). The second caller reported that the dispute was still ongoing. (Supp. App., p. 73).

The Kendallville Officers were advised by the dispatcher of the domestic disturbance and the fire on the front lawn of the Granada Residence. (Supp. App., pp. 3, 7, 9, 11, 13, 72 and 73).

As Officer Davis approached the Granada Residence, he observed a large fire on the front lawn. (Supp. App., pp. 4). He also observed several individuals, whom he believed to be Dr. Leonelli's neighbors, in the street, near the Granada Residence. (*Id.*).

As he exited his patrol car, Officer Davis was advised by one of the individuals in the street that there was another domestic, or fight, occurring at the Granada Residence. (*Id.*). Then, as he approached the house, he observed Dr. Leonelli standing on the front porch. (*Id.*).

Officer Davis was wearing his full police uniform and identified himself as a police officer to Dr. Leonelli. (*Id.*). He then instructed Dr. Leonelli to come and talk to him. (*Id.*). Dr. Leonelli responded by shaking his head, turning around and walking into the house. (*Id.*).

In response, Officer Davis opened the front door and again instructed Dr. Leonelli to come with him. (*Id.*). However, Dr. Leonelli continued to walk away from Officer Davis, toward the interior of the house. (*Id.*). As Dr. Leonelli walked away, Officer Davis noticed his right hand reaching in front of his body. (*Id.*). Not knowing what Dr. Leonelli was reaching for, for his own safety and the safety of anyone who might have been in the house, Officer Davis entered the house, and escorted Dr. Leonelli from the house. (*Id.*).

Based upon his observations, the information reported to him and Dr. Leonelli's conduct, Officer Davis believed that there was probable cause to arrest Dr. Leonelli for Resisting Law Enforcement. (*Id.*). Officer Davis was also concerned that additional crimes related to the reports of domestic violence and the fire on the lawn of the Granada Residence had been committed. (*Id.*).

As Sergeant McCann, the next officer to arrive at the Granada Residence, approached the Granada Residence, he also observed, and his in-car camera recorded video of, a large fire on the

front lawn. (Supp. App., p. 8 and video). Sergeant McCann watched as Officer Davis escorted Dr. Leonelli from the porch of the Granada Residence. (*Id*.). Sergeant McCann walked-up to Officer Davis and Dr. Leonelli, and stood nearby while Officer Davis handcuffed Dr. Leonelli. (*Id*.). At no time did Sergeant McCann touch Dr. Leonelli. (*Id*.).

Prior to any of the Kendallville Officers entering the Granada Residence to search for a victim, Sergeant McCann, Detective Waters and Officer Richardson were informed by one of Dr. Leonelli's neighbors that she heard a woman screaming in the house prior to the Kendallville Officers' arrival. (Supp. App., pp. 8, 10 and 12). In addition, prior to any of the Kendallville Officers entering the Granada Residence to search for a victim, each of the Kendallville Officers observed damage to the front door of the Granada Residence which was consistent with the door having been forced open before they arrived. (Supp. App., pp. 5, 8, 10, 12 and 14).

After other police officers arrived at the scene, Officer Davis, Detective Waters, Officer Richardson and Officer Richie entered the Granada Residence for the limited purpose of searching for victims and/or other individuals that had been involved in an altercation with Dr. Leonelli. (Supp. App., pp. 4, 10, 12 and 14). At no time did Sergeant McCann enter or conduct a search inside the Granada Residence. (Supp. App., p. 8).

After looking inside the Granada Residence for other individuals, Officer Davis spoke with Dr. Leonelli. (Supp. App., p. 5). Dr. Leonelli indicated that he and his wife had been involved in a verbal altercation earlier in the evening, and that she had left on foot. (*Id*.).

Officer Davis then radioed Dr. Leonelli's identifying information to dispatch for a warrants check. (*Id*.). He was later informed by dispatch that there was a no contact, protective order against Dr. Leonelli by Jayme Leonelli, whom Officer Davis believed to be Dr. Leonelli's

4

wife.  (*Id.*).  He also believed Jayme Leonelli to be the person that had left the Granada Residence after an argument with Dr. Leonelli.  (*Id.*).  Based upon this additional information, Officer Davis also prepared a probable cause affidavit for Dr. Leonelli's arrest for Invasion of Privacy.  (*Id.*).

None of the Kendallville Officers searched Dr. Leonelli's computer, nor did any of the Kendallville Officers search through any drawers in the Granada Residence.  (Supp. App., pp. 5, 8, 10, 12 and 14).  They only searched those areas of the Granada Residence where they believed they might find a human body or a person hiding.  (*Id.*).

Officer Davis is the only defendant that Dr. Leonelli believes subjected him to false arrest and malicious prosecution.  (Supp. App., p. 21).

Dr. Leonelli did not see any of the defendants enter his home, other than Officer Davis at the time of his arrest.  (Supp. App., pp. 17-20).  Dr. Leonelli did not see any of the defendants search his home.  (*Id.*).  Dr. Leonelli's wife testified in her deposition that when she returned home late that evening, after Dr. Leonelli had been taken to jail, "the front door was wide open".  (Supp. App., p. 96).

Dr. Leonelli testified that he does not believe that any of the defendants, with the exception of Officer Davis, did anything wrong.  (Supp. App, pp. 21-24).

## V.
## SUMMARY OF THE ARGUMENT

The City of Kendallville (the "City") and the Kendallville Officers presented evidence and argument to the District Court which established, without a genuine issue of material fact, that they were entitled to summary judgment.  The District Court agreed.

On appeal, the crux of Dr. Leonelli's argument is he does not believe the District Court applied the correct standard when it granted summary judgment. Dr. Leonelli is advocating a summary judgment standard which takes as true all statements and allegations by the non-movant, whether supported by admissible evidence or not, and which eliminates all undisputed facts which are harmful to the non-movant's case. This is not the correct standard. In fact, if it were the applicable standard it would render filing a motion for summary judgment a meaningless endeavor, as it would be impossible to meet.

In rendering its decision granting the defendants summary judgment, the District Court applied the correct standard. It did not consider as true any facts about which there was a genuine and material issue. The Kendallville Officers and the City established their entitlement to summary judgment. First, they showed that Officer Davis had probable cause to arrest Dr. Leonelli. Second, they showed that probable cause and exigent circumstances existed at the time Officer Davis entered the Granada Residence to arrest Dr. Leonelli. Third, they established that Officer Davis is entitled to qualified immunity. Fourth, the Kendallville Officers and the City showed that exigent circumstance existed when the Granada Residence was searched. Fifth, they established that the scope of the search was appropriate. Sixth, they showed that the Kendallville Officers are entitled to qualified immunity. Seventh, they showed that the Kendallville Officers were entitled to immunity for any state law claims under the immunity provisions of the Indiana Tort Claims Act. Eighth, they demonstrated that Dr. Leonelli's claim for punitive damages was inappropriate. Ninth, they established that Officer McCann did not engage in any actionable conduct. Finally, the Kendallville Officers and the City showed that there was no actionable claim against the City.

In response, Dr. Leonelli failed to designate any admissible evidence that raised a genuine issue of material fact which would have precluded summary judgment on any of the defenses established by the Kendallville Officers and the City. The District Court did not err when it granted summary judgment for the Kendallville Officers and the City. The decision of the District Court should be affirmed.

<strong><u>VI.</u></strong><br><strong><u>ARGUMENT</u></strong>

**A.**   **<u>Standard of Review</u>**

The proper standard of review for a District Court's grant of summary judgment and the proper standard of review for qualified immunity cases involving probable cause is *de novo*. *Wollin v. Gondert*, 192 F.3d 616, 620-21 (7th Cir. 1999). On appeal, a District Court's order granting summary judgment is reviewed using the same summary judgment standards as the District Court is required to use. *Feliberty v. Kemper Corp.*, 98 F.3d 274, 276 (7th Cir. 1996).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury

7

could reasonably find for the plaintiff." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts that there is a genuine issue for trial. (*Id.*). "The days are gone, if they ever existed, when the non-moving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).

**B.**     **The District Court applied the correct standard.**

In his brief, Dr. Leonelli begins by arguing that the District Court failed to apply the correct standard of review. Dr. Leonelli quotes a footnote in the District Court's Order which states: "As the defendants are claiming immunity the facts and circumstances *as perceived by the Defendant Officers* are paramount in this case. Furthermore, the existence of probable cause is determined by what the Defendant Officers knew and believed at the scene. Leonelli's version of the facts are included as relevant." Dr. Leonelli argues that this is not the correct standard.

Dr. Leonelli's argument must fail. The District Court did not err. Its statement is correct. In addition, the District Court did not delete any facts from its analysis that were supported by the evidence or accept any facts that were genuinely disputed.

**1.** **The District Court did not consider inappropriate facts in its probable cause analysis.**

Probable cause exists when "an officer reasonably believes, in light of the facts and circumstances *within his knowledge* at the time of the arrest, that the suspect has committed, or is committing, an offense." *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003) (emphasis added). "An officer's belief in the existence of probable cause need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). Courts evaluate probable cause based on the facts as they would have appeared to a reasonable person in the position of the arresting officer– seeing what he saw, hearing what he heard. *United States v. Parra*, 402 F.3d 752 (7th Cir. 2005).

Contrary to Dr. Leonelli's argument, the District Court did not state that it would be taking the Kendallville Officers' version of the facts as true. Rather, with respect to the probable cause issue, the District Court, as required, considered the facts within Officer Douglas's knowledge at the time of Dr. Leonelli's arrest. The following uncontested facts, within Officer Douglas's knowledge, were established by admissible evidence submitted to the District Court:

a. Officer Davis was advised by the dispatcher that there was a "domestic disturbance" occurring at Dr. Leonelli's home. Dr. Leonelli offered no evidence to contradict this fact.

b. When Officer Davis arrived a very large fire was blazing on the front lawn and Dr. Leonelli was standing outside. The video-tape from Sergeant Mike McCann's

in-car camera clearly shows the fire. There was no evidence offered to dispute this fact.

c.      Officer Davis was advised by one of the individuals in the street that another domestic, or fight, was occurring at the home. There was no evidence to contradict this fact.

d.      Officer Davis instructed Dr. Leonelli to come and talk to him. Dr. Leonelli offered no evidence to contradict this fact. In his deposition, he clearly stated that it was possible that Officer Davis said something to him and he did not hear it. Dr. Leonelli's testimony, in relevant part, is as follows:

Q.      Is it possible that you were so focused, that you didn't notice the officer pulling up?

A.      It's possible. I didn't know anybody—I didn't look around. I keep—I mind my own business.

Q.      Is it possible that you didn't notice the officer walking up your lawn as you're going to the house?

A.      I didn't see anybody.

Q.      But is it possible that you were just so focused that you didn't notice?

A.      I didn't notice him.

Q.      And is it possible that the officer said something to you and you just didn't hear him or you didn't notice…

A.      I didn't notice.

Q.      …before you went into the house?

A.      Yes.

Q.    So it's possible?

A.    Yes.

(Supp. App., p. 176).

e.    Dr. Leonelli shook his head, turned around and walked into the house.  There was no evidence offered to contradict this fact.   Interestingly, even though Dr. Leonelli submitted an affidavit, nowhere in the affidavit did he deny or otherwise address this fact.

f.    Officer Davis opened the front door and again instructed Dr. Leonelli to come with him.  No evidence was submitted to contradict this fact.

g.    Dr. Leonelli continued to walk away from Officer Davis, toward the interior of the house.  Once again, there was no evidence before the District Court that would contradict this fact.

Taking the facts in the light most favorable to Dr. Leonelli, does not change or eliminate the facts presented above.  The summary judgment standard does not require the Court to ignore facts which are harmful to the non-movant's case.  Such a rule would yield absurd results.

If Dr. Leonelli disagreed with these facts, he should have submitted evidence demonstrating that they were at issue.  He did not.  Consequently, the District Court did not err.

**2.    The District Court did not consider inappropriate facts in its exigent circumstances analysis.**

As for Dr. Leonelli's claim that the District Court improperly performed its exigent circumstances analysis from the subjective viewpoints of the Kendallville Officers, he is again

wrong. The facts in the Court's analysis were from the Kendallville Officers' perspective, and they were undisputed.

Exigent circumstances exist when "circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) (*quoting*, *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993)). "When determining whether exigent circumstances exist, the court must analyze the situation from the perspective of the Kendallville Officers at the scene. Accordingly, we ask not what the police *could* have done." *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998).

The following facts were before the District Court for its exigent circumstances analysis:

    a.    The Kendallville Officers were advised by the dispatcher that there was a domestic disturbance occurring at the Granada Residence, and that someone had started a fire on the front lawn. These facts were undisputed.

    b.    A very large fire was blazing on the front lawn. Again, the video-tape from Sergeant Mike McCann's in-car camera clearly shows the fire. There was no evidence offered to dispute this fact.

    c.    Officer Davis was advised by one of the individuals in the street that another domestic, or fight, was occurring at the home. As previously stated, there was no evidence to contradict this fact.

    d.    Prior to any of the Kendallville Officers entering the Granada Residence to search for a victim, Sergeant McCann, Detective Waters and Officer Richardson were

informed by one of Dr. Leonelli's neighbors that she heard a woman screaming in the house prior to the Kendallville Officers' arrival. Dr. Leonelli's affidavits from two neighbors, Stacey Snyder and Greg Miller, stating that they did not report any screaming to the Kendallville Officers does not conflict with the testimony of Sergeant McCann, Detective Waters and Officer Richardson. The raging fire had attracted several neighbors to the scene. There were others besides Stacey Snyder and Greg Miller who could have reported the screaming to the officers. Furthermore, even if this fact were eliminated, it is not the only fact that established the existence of exigent circumstances.

e.    Prior to any of the Kendallville Officers entering the Granada Residence to search for a victim, each of the Kendallville Officers observed damage to the front door of the Granada Residence which was consistent with the door having been forced open before they arrived. Although Dr. Leonelli attempts to draw a distinction between "old" damage and "fresh" damage, Dr. Leonelli admitted that there was damage to the door frame.[1]

These facts were not contradicted by the evidence submitted by Dr. Leonelli. Thus, it was proper for the District Court to take them as true. Dr. Leonelli's standard of review argument must fail.

---

[1] Dr. Leonelli seems to be making the nonsensical argument that the Kendallville Officers needed to determine the precise age of the damage to the door frame before concluding that it was suspicious and could have been the result of Dr. Leonelli kicking-in the door.

**C.    The District Court correctly determined that Officer Davis had probable cause to arrest Dr. Leonelli.**

The evidence before the District Court established that Officer Davis had probable cause to arrest Dr. Leonelli for Resisting Law Enforcement ("RLE") and Invasion of Privacy.   The District Court's decision must be affirmed.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).   Probable cause exists when "an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003).   "An officer's belief in the existence of probable cause need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004).   "All police need is probable cause, which is well short of certainty." *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006).   Courts evaluate probable cause based on the facts as they would have appeared to a reasonable person <u>in the position of the arresting officer</u>– seeing what he saw, hearing what he heard.   *United States v. Parra*, 402 F.3d 752 (7th Cir. 2005).

In determining whether probable cause exists, the actual motives of the arresting officers are irrelevant; the question is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them.   *Scott v. United States*, 98 S. Ct. 1717, 1723 (1978).   A plaintiff's Section 1983 action must be dismissed without a trial if there is any

reasonable basis to conclude that probable cause existed.  *Thompson v. Wagner*, 319 F.3d 931, 935 (7th Cir. 2003).

1.  **Officer Davis had probable cause to arrest Dr. Leonelli for Resisting Law Enforcement.**

Indiana Code 35-44-3-3 prohibits anyone from resisting or interfering with a law enforcement officer.  The statute provides, in relevant part, as follows:

(a)  A person who knowingly or intentionally:

   (1)  forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

   (2)  forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

   (3)  flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor except as provided in subsection (b).

The Indiana Court of Appeals has held in two cases, *Tawdul v. State*, 720 N.E.2d 1211 (Ind. Ct. App. 1999) and *Wellman v. State*, 703 N.E.2d 1061 (Ind. Ct. App. 1998), that the failure to comply with a law enforcement officer's lawful request is sufficient to constitute "fleeing" under the RLE statute.

In *Tawdul*, a police officer pulled over a vehicle in which Tawdul was a passenger.  720 N.E.2d at 1212.  Tawdul and the driver exited the vehicle and then refused to return to the

vehicle despite the officer's repeated requests to remain inside the vehicle.  *Id*.  Tawdul was

arrested and convicted of  RLE.  *Id*.

On appeal, Tawdul argued, among other things, that he had no obligation to return to the

car and that his detention was unlawful.  *Id*. at 1214.  The Indiana Court of Appeals held:

> We therefore conclude that Tawdul had the obligation to comply with the
> officer's request to return to the car for purposes of ensuring officer safety
> and allowing the officer to make an assessment of the situation.  Because
> Tawdul failed to comply with this request, his arrest for resisting law
> enforcement is valid.

*Id*. at 1217.

In *Wellman*, a Division of Family and Children's Services worker and a police officer

were at Wellman's house to investigate a report of child abuse.  703 N.E.2d at 1062.  There was

a discussion outside the residence between Wellman, the caseworker and the officer in which

Wellman was uncooperative.  *Id*.  At one point, Wellman stated that he was going back inside his

home.  *Id*.  He was told by the officer not to do so.  *Id*.  Nevertheless, Wellman went back inside

and locked the door.  *Id*.  The officer demanded that Wellman open the door.  *Id*.  Wellman

refused.  *Id*.  The officer then forced the door open, entered the home and arrested Wellman for

RLE.  *Id*.

Wellman was charged with, and convicted of, two counts of RLE.  *Id*.  One of the counts

was for entering the house despite the officer's order to remain outside.  *Id*.

On appeal, Wellman argued that the act of walking into his house did not constitute

"fleeing" under the RLE statute.  *Id*. at 1062-63.  The Indiana Court of Appeals disagreed, and

held: "for purposes of a conviction of resisting law enforcement, it was enough that Wellman

disobeyed a command to remain by walking away from Officer Hatfield into his own house and thereafter locking the door behind him." *Id*. at 1063.

Here, Officer Davis was confronted with a situation in which he was dispatched to the Granada Residence to investigate a report of a domestic disturbance and a fire on the front lawn. As he approached the Granada Residence, he observed a large fire on the front lawn. As he exited his patrol car, Officer Davis was advised by a neighbor that there was another fight occurring at the Granada Residence. Officer Davis then observed Dr. Leonelli standing on the front porch.

While in his full police uniform, Officer Davis identified himself as a police officer to Dr. Leonelli, and instructed Dr. Leonelli to come and talk to him at least two times. Dr. Leonelli refused both times, and walked away from Officer Davis both times. In light of the facts and circumstances, a reasonable officer would have believed that Dr. Leonelli had committed the offense of RLE. Therefore, Officer Davis had probable cause to arrest Dr. Leonelli.

In his brief, Dr. Leonelli argues that the District Court should have disregarded Dr. Leonelli's deposition testimony that it was possible that he did not hear Officer Davis when he was commanded to come to Officer Davis, and should have accepted the contradictory testimony in Dr. Leonelli's affidavit. Dr. Leonelli is wrong.

This Court has consistently held that "a party cannot defeat summary judgment by having a witness contradict her own prior deposition testimony." *Paton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 488 (7th Cir. 2007) (*citing Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006)). The law recognizes that a change in testimony, in light of a pending motion for summary judgment, may be a ruse. *Id.*

17

In this case, Dr. Leonelli's affidavit was offered as an attempt to create an issue of fact that did not exist. He improperly contradicted his prior deposition testimony. Thus, the District Court correctly struck this portion of Dr. Leonelli's affidavit.

Next, Dr. Leonelli argues that Officer Davis should not have entered his home to apprehend him without a warrant. Dr. Leonelli acknowledges that a warrantless entry is permissible where probable cause and exigent circumstances exist. It has already been established that Officer Davis had probable cause. There were also exigent circumstances present which required entry into the Granada Residence.

Exigent circumstances justifying a warrantless entry into a home exist when there is a risk of danger to the police or to other persons inside or outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

In the present case, Officer Davis was dispatched to the Granada Residence for a domestic disturbance and a fire on the lawn. Upon arrival, Officer Davis observed a large fire on the front lawn and was advised that there was another domestic or fight occurring at the residence. He observed Dr. Leonelli on the front porch near the fire. When he directed Dr. Leonelli to come to him, Dr. Leonelli shook his head and walked away. At this point, the fire, the strange behavior of Dr. Leonelli and the reports of a domestic dispute would have made a reasonable officer extremely concerned about the safety of other persons who may have been involved in the domestic dispute and were likely inside the house.

Officer Davis then opened the front door and again instructed Dr. Leonelli to come to him. He entered the house only after Dr. Leonelli failed to comply and reached for something in front of him. Officer Davis had a reasonable belief that there was a risk of danger to himself and

a risk of danger to anyone else inside the home. Therefore, Officer Davis's entry was appropriate.

The District Court did not err by granting summary judgment on the issue of probable cause. Its decision should be affirmed.

**2.** **Officer Davis also had probable cause to arrest Dr. Leonelli for Invasion of Privacy.**

Before the District Court, Officer Davis also submitted evidence establishing that he had probable cause to arrest Dr. Leonelli for Invasion of Privacy. Dr. Leonelli chose not to directly address this evidence and argument in his brief. However, Officer Davis was also entitled to summary judgment based upon the fact that there was probable cause for the Invasion of Privacy charge.[2]

Indiana Code Section 35-46-1-15.1 makes the knowing or intentional violation of a protective order a class "A" misdemeanor. After detaining Dr. Leonelli, Officer Davis learned that there was a no-contact, protective order against Dr. Leonelli by Jayme Leonelli, whom he believed to be Dr. Leonelli's wife. He also believed that Jayme Leonelli was the person to whom Dr. Leonelli had earlier referred to as having an argument with him. In addition, Officer Davis observed that Dr. Leonelli had ignited a woman's clothing on the front lawn, and there was damage to the front door of the house which was consistent with the door having been kicked-in before they arrived.

---

[2] As long as probable cause for arrest exists for at least one charge, evidence of probable cause for other possible charges is unnecessary. *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993).

Given these facts and circumstances that were within Officer Davis's knowledge, a reasonable officer would have believed that Dr. Leonelli had committed the offense of Invasion of Privacy. Thus, summary judgment on any false imprisonment or malicious prosecution claims was also appropriate because there was probable cause for the Invasion of Privacy charge.

**D. The District Court correctly concluded that Officer Davis is entitled to qualified immunity.**

Officer Davis showed, and the District Court agreed, that he is entitled to qualified immunity. Dr. Leonelli incorrectly argues the District Court erred. First, it will be shown that Officer Davis is entitled to qualified immunity under both prongs of the analysis. Then Dr. Leonelli's qualified immunity arguments on appeal will be addressed.

"A public official's conduct is protected by qualified immunity when "the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989); *Meyer v. Robinson*, 992 F.2d 734, 738 (7th Cir. 1993). "The objective standard is designed to protect the public interest in deterrence of and compensation for an official's unlawful conduct while safeguarding the official's ability to make difficult decisions with independence and without fear of consequences." *Id.*

A two-step analysis is used to determine whether a defendant is entitled to the protections of the qualified immunity doctrine: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) "[W]hether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The inquiry as to the

second step "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.[3]

The qualified immunity inquiry acknowledges "that reasonable mistakes can be made as to the legal constraints on particular police conduct". *Id.* at 205. It is the plaintiff's burden to show "the existence of a clearly established constitutional right." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). "Viewed as a whole, the doctrine of qualified immunity erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is 'designed to shield from civil immunity all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 1177 (*quoting*, *Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994)). The applicability of the qualified immunity doctrine is a question of law. *Hammon v. Kunard*, 148 F.3d 692, 695 (7th Cir. 1998). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007).

Under both prongs of the analysis, Officer Davis is entitled to qualified immunity. Officer Davis had probable cause to arrest Dr. Leonelli. He did not violate Dr. Leonelli's Constitutional rights. However, even assuming a Constitutional violation occurred, it would not have been clear to a reasonable officer that Officer Davis' conduct was unlawful in the situation that he confronted.

---

[3] The two-step qualified immunity analysis has recently been addressed by the United States Supreme Court in *Pearson v. Callahan*, 129 S.Ct. 808 (2009). However, the *Pearson* decision has not changed the analysis with respect to this case.

1.     **Officer Davis did not violate a clearly established Constitutional right.**

Although there is a clearly established right to be free from warrantless arrests in the absence of probable cause, as shown above, Officer Davis had probable cause to arrest Dr. Leonelli.  As a result, Officer Davis did not violate Dr. Leonelli's Constitutional rights and is entitled to qualified immunity.

2.     **Even if Officer Davis lacked probable cause to arrest Dr. Leonelli for Resisting Law Enforcement and Invasion of Privacy, it would not have been clear to a reasonable officer that Officer Davis lacked probable cause under the facts existing at the time of Dr. Leonelli's arrest.**

Even if Officer Davis lacked probable cause to arrest Dr. Leonelli for RLE and Invasion of Privacy, he is entitled to qualified immunity under the second prong of the analysis.  No reasonable officer would believe that Dr. Leonelli's arrest was unlawful.

With respect to the RLE charge, the evidence shows that Dr. Leonelli refused to comply with Officer Davis' requests.  A reasonable police officer, in Officer Davis' position, would conclude that, under *Tawdul* and *Wellman*, instructing Dr. Leonelli to come to him, and Dr. Leonelli's refusal to comply constituted probable cause to arrest him for RLE.

Furthermore, a reasonable officer would also have concluded that there was probable cause to arrest Dr. Leonelli for Invasion of Privacy.  Officer Davis was advised by dispatch that there was a protective order in place for Jaymie Leonelli.  Under the facts and circumstances present– the fire on the front lawn, the burning of a woman's clothing, the damage to the front door of the house which was consistent with the door having been kicked-in and Dr. Leonelli's admission that he and his wife had a verbal altercation that evening– it appeared that Dr. Leonelli violated the protective order.  Consequently, Officer Davis is entitled to qualified immunity.

Dr. Leonelli argues that the District Court applied the wrong standard in reaching its conclusion that Officer Davis is entitled to qualified immunity. As shown repeatedly above, the District Court applied the correct standard for determining whether there was probable cause. Furthermore, the facts established by the evidence before the Court established the existence of probable cause and exigent circumstances. Dr. Leonelli's argument must fail. Officer Davis is entitled to qualified immunity.

**E.     The District Court correctly determined that exigent circumstances existed which permitted the Kendallville Officers to search Dr. Leonelli's residence without a warrant.**

Dr. Leonelli also claims that his home was improperly searched without a warrant by the Kendallville Officers. While four of the Kendallville Officers; Officer Davis, Detective Waters, Officer Richardson and Officer Richie; performed a limited search of the Granada Residence, evidence was submitted which established the existence of exigent circumstances. Thus, the limited search was lawful.

"Police generally need a warrant to enter a home, but 'warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant.'" *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003) (*quoting*, *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003)). Exigent circumstances justifying a warrantless entry into a home exist when, among other things, there is the risk of danger to the police or to other persons inside or outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990) and *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) (q*uoting*, *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993)) (Exigent circumstances exist when "circumstances as they appeared at the moment of entry would lead a reasonable,

experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance."). "When determining whether exigent circumstances exist, the court must analyze the situation from the perspective of the officers at the scene. Accordingly, we ask not what the police *could* have done." *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998).

Prior to searching the Granada Residence for victims/other occupants, the Kendallville Officers had a reasonable belief, based upon the facts and circumstances, that there might be someone inside who required immediate assistance. The Kendallville Officers were dispatched to the residence to investigate a report of a domestic disturbance. They observed a large fire on the front lawn. A neighbor advised Officer Davis that there was another "domestic" at the Granada Residence. Before searching the Granada Residence, the Kendallville Officers observed damage to the front door of the house which was consistent with the door having been kicked-in before the police had arrived. Also, Sergeant McCann, Detective Waters and Officer Richardson were informed by one of Dr. Leonelli's neighbors that she heard a woman screaming in the house prior to their arrival. Lastly, the odd behavior of Dr. Leonelli was cause for concern. Collectively, these facts would have created the belief in a reasonable officer that there were exigent circumstances that required entry to aid or protect possible victims within the Granada Residence. Therefore, it must be concluded that exigent circumstances existed which justified that entry into the Granada Residence.

In his brief, Dr. Leonelli takes issue with the reports of a fight and screaming. However, as for the claim that reports of a fight were fabricated, Dr. Leonelli submitted a transcript of 911 calls to the Kendallville Police Department, as evidence to the District Court, showing that a

caller, identified as "Gordon", reported a domestic dispute with a fire on the front lawn.  There was also a subsequent 911 caller who reported that the dispute was still ongoing. [4]

A 911 call of an assault, possibly in progress by itself "'can be enough to support warrantless searches under the exigent circumstances exception particularly where…the caller identified himself.'"  *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003) (*quoting*, *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000)).  Consequently, under *Jenkins*, it must be concluded that exigent circumstances were present.

As for whether screams were reported to the Kendallville Officers, the evidence before the District Court established, without contradiction, that screams from within the Granada Residence were reported to three of the Kendallville Officers.  However, even assuming that there had been no reports of screams, there still was more than enough evidence of exigent circumstances to justify the entry and limited search.  Therefore, Dr. Leonelli's argument must fail.

**F.** **The District Court correctly determined that the scope of the search that was performed by four of the Kendallville Officers was appropriate.**

The evidence before the District Court showed that Officer Davis, Detective Waters, Officer Richardson and Officer Richie conducted a search of the Granada Residence that was limited to those areas of the house were a person or body could be found.  The evidence submitted by Dr. Leonelli was insufficient to create an issue of fact.

---

[4] So far, Dr. Leonelli has made no claim, nor produced any evidence, that these 911 calls were fabricated.

Dr. Leonelli submitted his own affidavit and the deposition testimony of his wife, Mary Leonelli, in an attempt to create an issue of fact as to the scope of the search. In Dr. Leonelli's affidavit, he claims that the Kendallville Officers searched his cabinets, drawers and computer. However, he goes on to state the basis for his conclusion—Mrs. Leonelli told him that the next morning that these things had been gone through. The District Court struck these statements because Dr. Leonelli did not have personal knowledge of the "facts" that he has made in this portion of his affidavit. Thus, these statements could not create an issue of fact.

In addition to his own affidavit, Dr. Leonelli offered the portion of his wife's deposition testimony where she stated that when she returned the next day, drawers were pulled out and cabinets were open. However, even if this had been true, there was no evidence that this was done by any of the Kendallville Officers. Mrs. Leonelli testified in her deposition that when she returned home late that evening (after Dr. Leonelli had been arrested and transported to jail), "the front door was wide open." If the front door was open, anyone could have entered the Granada Residence after the Kendallville Officers left. Since Dr. Leonelli did not observe any of the Kendallville Officers search anything in his home and the door was wide open, there is no evidence that the search exceeded its proper scope. Therefore, the District Court correctly granted summary judgment.

## G.  The District Court did not err when it concluded that the Kendallville Officers are entitled to qualified immunity.

In the interest of brevity, the law regarding qualified immunity which was previously provided will not be restated here, but is incorporated by reference.

Under both prongs of the qualified immunity analysis, the Kendallville Officers are entitled to qualified immunity. There were exigent circumstances requiring the search of the Granada Residence. The Kendallville Officers did not violate Dr. Leonelli's Constitutional rights. However, even assuming a Constitutional violation had occurred, it would not have been clear to a reasonable officer that the search was unlawful in the situation that the Kendallville Officers confronted.

1. **The Kendallville Officers did not violate a clearly established Constitutional right.**

Although there is a clearly established right to be free from a warrantless search of one's residence, as shown above, exigent circumstances obligated Officer Davis, Detective Waters, Officer Richardson and Officer Richie to search the Granada Residence for possible victims. Thus, it must be concluded that Dr. Loenelli's Constitutional rights were not violated, and the Kendallville Officers are entitled to qualified immunity.

2. **Even if Officer Davis, Detective Waters, Officer Richardson and Officer Richie lacked exigent circumstance to search the Granada Residence, it would not have been clear to a reasonable officer that, under the facts present at the time of the search, the search was illegal.**

Even if the exigent circumstances exception did not apply, a reasonable officer would have believed that the exception did apply. Thus, the Kendallville Officers are also entitled to qualified immunity under the second prong of the analysis.

Exigent circumstances exist when "circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." *United States v.*

*Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) (*quoting*, *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993)).

Here, the Kendallville Officers were dispatched to the Granada Residence to investigate a report of a domestic disturbance. They observed a large fire on the front lawn. A neighbor advised at least one of the Kendallville Officers that there was another "domestic" at the Granada Residence. Before searching the Granada Residence, each of the Kendallville Officers observed damage to the front door of the house which was consistent with the door having been kicked-in before the police had arrived. Additionally, Sergeant McCann, Detective Waters and Officer Richardson were informed by one of Dr. Leonelli's neighbors that she heard a woman screaming in the house prior to their arrival. Collectively, these facts would have created the belief in a reasonable officer that there were exigent circumstances that required entry to aid or protect possible victims within the Granada Residence. Therefore, the Kendallville Officers are entitled to qualified immunity.

## H.    The District Court correctly determined that the Kendallville Officers are entitled to immunity under the Indiana Tort Claims Act.

The Indiana Tort Claims Act provides governmental employees with immunity when enforcing the law (except for false arrest/imprisonment claims) and when initiating judicial or administrative proceedings. Indiana Code Section 34-13-3-3 (6) and (8). The ITCA's immunity provisions extend to malicious prosecution claims. *Butt v. McEvoy*, 669 N.E.2d 1015 1017-18 (Ind. Ct. App. 1996) and Indiana Code § 34-13-3-3 (6) and (8).

Dr. Leonelli alleged that he was maliciously prosecuted by Officer Davis. The ITCA is clear, Officer Davis is immune from liability for the initiation of judicial proceedings against Dr. Leonelli and the enforcement of the law.

Moreover, as discussed above, Officer Davis had probable cause. Therefore, summary judgment was appropriate. The District Court did not err.

## I.     The District Court correctly determined that Dr. Leonelli has no claim for punitive damages.

In Dr. Leonelli's appellate brief, he argues that Kendallville Officers engaged in alleged conduct which Dr. Leonelli believes entitles him to punitive damages. However, there is no evidence of any conduct which rises to the level necessary for punitive damages.

Punitive damages may only be assessed "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Merrit v. De Los Santos*, 721 F.2d 598, 601 (7th Cir. 1983) (*citing*, *Smith v. Wade*, 461 U.S. 30 (1983)).

In this case, there is no evidence that the alleged conduct of any of the Kendallville Officers was motivated by evil motive or intent, or their alleged conduct involved reckless or callous indifference to the federally protected rights of Dr. Leonelli. Therefore, Dr. Leonelli's argument must fail.

## J.     Officer McCann did not engage in any actionable conduct.

There was no evidence that Officer McCann participated in Dr. Leonelli's arrest or the search of the Granada Residence. Although Dr. Leonelli does not address this in his brief, evidence was introduced and the argument was raised as part of the Defendants' Motion for

Summary judgment.  Thus, summary judgment was correctly granted for Officer McCann and should be affirmed.

**K.**     **There have not been any arguments raised by Dr. Leonelli which call into question the District Court's decision to grant summary judgment for the City of Kendallville.**

The City of Kendallville moved for, and was granted, summary judgment by the District Court.  In Dr. Leonelli's brief, there is no argument concerning, or mention of, this fact.

Arguments not raised in a party's initial appellate brief are waived.  *Awe v. Ashcroft*, 324 F.3d 509, 512-13 (7th Cir. 2003).  Therefore, the District Court's decision concerning the City of Kendallville must be affirmed.

## VII.
## CONCLUSION

Dr. Leonelli has failed to show any error on the part of the District Court.  The Court applied the correct standard and analysis to the facts established by the evidence and arrived at the correct decision.  The District Court's decision to grant summary judgment must be affirmed.

Therefore, the Appellees/Defendants; the City of Kendallville, Officer Douglas M. Davis, Officer Mike McCann, Detective Lance Waters, Sergeant Larry Richardson and Officer Johnny Richie; respectfully request that the District Court's decision be affirmed.

Respectfully Submitted,

HUNT SUEDHOFF KALAMAROS, LLP


s/Linda A. Polley
Linda A. Polley, #10897-02
Andrew S. Williams #23797-02
P.O. Box 11489
803 S. Calhoun Street, 9th Floor
Fort Wayne, Indiana 46858-1489
Telephone: (260) 423-1311
Attorneys for Defendants/Appellees,
The City of Kendallville, Patrolman Douglas
M. Davis, Patrolman Mike McCann,
Detective Larry Richardson, and Patrolman
Johnny Richie


## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    This brief contains 7,783 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 with twelve (12) characters per inch in Times New Roman font.


Date: March 2, 2009                    s/Andrew S. Williams
                                       Andrew S. Williams
                                       Attorney for Defendants/Appellees

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was mailed this 2nd day of March, 2009 to:

Mr. Christopher C. Myers
Christopher C. Myers & Associates
809 South Calhoun Street, Ste. 400
Fort Wayne, IN 46802

s/Andrew S. Williams
Andrew S. Williams